UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ELEANOR PRICE,                ]
                              ]
        Plaintiff,            ]
                              ]
        vs.                   ]   CV-05-CO-00435-S
                              ]
LAFARGE NORTH AMERICA, INC.,  ]
                              ]
        Defendant.            ]

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration defendant Lafarge North America, Inc.'s ("Lafarge") motion for summary judgment, which was filed on March 16, 2006.  (Doc. 34.)  Plaintiff Eleanor Price sued Lafarge for race and gender harassment and discrimination with respect to her discharge, training, and attempts at promotion under Title VII; racial harassment and discrimination with respect to her discharge, training, and attempts at promotion under 42 U.S.C. § 1981 ("§ 1981"); retaliation under both Title VII and § 1981; and unlawful interference with her rights under the Family

Medical and Leave Act ("FMLA").  (Doc. 1.)  Ms. Price also asserted Alabama

tort law claims for invasion of privacy and negligent supervision, training,

and retention.  (*Id.*)  Lafarge has moved for summary judgment on all of

Plaintiff's claims.[1]   The issues raised in Lafarge's motion for summary

judgment have been briefed by both parties and are now ripe for

consideration.  Upon full consideration of the legal arguments and evidence

presented by the parties, Lafarge's motion for summary judgment will be

granted in all respects.[2]

---

[1]After filing its motion for summary judgment and before the close of the Court's briefing schedule, Lafarge filed an unopposed motion for leave to amend its memorandum of law in support of its motion for summary judgment. (Doc. 47.) Because the motion was filed with no opposition, and because Lafarge has shown good cause for filing a supplement to its memorandum in support of summary judgment, the motion for leave to amend will be granted.

While Ms. Price did not oppose Lafarge's amendment to its memorandum in support of summary judgment, she did file a motion to strike the supplemental memorandum—apparently after reviewing its contents—on April 12, 2006.  (Doc. 51.) After full consideration of Ms. Price's arguments in opposition to the supplemental filing, and Lafarge's response to those arguments (Doc. 54), Ms. Price's motion to strike will be denied.

[2]Ms. Price has abandoned her claims for racial and sexual harassment under Title VII and § 1981; failure to promote based on her race or gender under Title VII; failure to train based on her race and gender under Title VII and § 1981; discriminatory discharge based on race under Title VII and § 1981; and negligent supervision, training, and retention under Alabama law.  (*See* Doc. 22 at 3; Doc. 46 at 10-34; Doc. 50.)  *See, e.g., Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.")  Therefore, these claims are due to be dismissed.

II.    Facts.[3]

Plaintiff Eleanor Price, an African-American female, was hired by Blue Circle, Inc. ("Blue Circle"), a cement manufacturer, as a "Lab Operator I" at its Roberta Plant in Calera, Alabama, on or around July 18, 1994.  The Roberta Plant manufactures cement for distribution to Lafarge's customers through the gathering and processing of raw materials obtained from the quarry located at the plant.  As a "Lab Operator I," Ms. Price collected and tested samples of cement to monitor quality.  Defendant Lafarge purchased the assets of Blue Circle in 2001 and began operating the Roberta Plant that December.

In January 2002, it was announced that Lafarge was eliminating "Lab Operator I" positions effective January 2003.  Following the announcement, Ms. Price began searching for other positions at the Roberta Plant.  Ms. Price applied for the "RK-5 Production Operator II" position in the Lab in 2002,

_____

[3]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

but she did not pass one of the two required tests.  Ms. Price also bid unsuccessfully on "Shipping Operator I" positions in March and May 2002, and two "Quarry Operator I" positions and an "Operator I" position in January 2003.  In February 2003, Ms. Price took a position on the Labor Crew.

While working on the Labor Crew, Ms. Price continued to bid on other positions at the Roberta Plant.  In March or April 2003, Ms. Price bid on a "Quarry Operator II" position, but the position was awarded to a white male.  She took the test for the "RK-5 Production Operator II" position again in July 2003, but she was informed again that she did not pass a portion of the test.  Her bid for an "Operator I-Shipping" position was also rejected in July 2003.  In September 2003, Ms. Price successfully bid into a "Quarry Operator I" position.  At that time, Ms. Price became the only female employee working in the quarry.  Ms. Price's primary duties as a "Quarry Operator I" included driving a haul truck, operating a clay loader, and performing crusher duties.  She reported to the Quarry Production Coordinator, who in turn reported to the Quarry Manager.

On February 22, 2004, Ms. Price was scheduled to work as a clay operator during a weekend shift.  When Ms. Price arrived for her shift around 3 p.m., the clay system was not functioning.  Jeff Sheffield, the clay operator on the first shift, told Ms. Price that the system was down and that he did not do anything on his shift.  Ms. Price stayed in the quarry office from approximately 3 p.m. until 4:30 p.m.  During that time, she spoke only to one other quarry operator.  Sometime between 4:30 p.m. and 5:15 p.m., Ms. Price left the quarry office and went to the main office to use the women's restroom.  While the quarry office had a unisex restroom, and a port-a-potty was located in the quarry, Ms. Price preferred to use the designated women's restroom in the main office.  Ms. Price did not return to the quarry office until around 6 p.m.  When she returned, she heard on the radio that the clay system was operational and that a co-worker had been covering her duties in her absence.

On March 5, 2004, the Quarry Production Coordinator issued a written warning to Ms. Price, which stated in part:

> Issue:  From 3 pm until approximately 6:45 pm on Sunday 2/22/04, Eleanor was not present at assigned tasks in her work area, did not inform the control

room when she was away from the radio, did not respond to radio inquiries, and was not found during a search from 5 pm until 6 pm by the shift supervisor and another employee.  Eleanor did not reappear until approximately 6:45 when she called the control room on the radio.  Her job running clay had to be filled by another person during part of this time.

Result:  Eleanor is receiving this written warning for poor work performance indicated by this unacceptable behavior of failure to notify the control room or shift supervisor when leaving her work area, failure to follow clay loading work procedures and this day's written work instructions. Therefore, any future event of this type will result in further disciplinary action up to and including termination.

Ms. Price objected to the written reprimand.

On March 10, 2004, Ms. Price submitted a request for a two-month medical leave of absence, and Lafarge granted her request.  During the two-month leave period, Ms. Price asked for an additional three weeks, and Lafarge again granted her request.  When Ms. Price returned to work on June 1, 2004, Lafarge reinstated her to the same position she held before her leave commenced ("Quarry Operator I") and she was given the same pay, schedule, benefits, and duties.

On June 23, 2004, Ms. Price was hauling lime to a Vulcan Materials ("Vulcan") site located next to the Roberta Plant and across County Road 16.  As a second shift worker, Ms. Price was allowed two fifteen minute breaks.  During one of her breaks, Ms. Price had a friend and former co-worker bring her lunch.  Ms. Price pulled her haul truck over on the side of County Road 16 and took the food from her friend.  Around that time, Bob Crow, the Leadman on the second shift, was making rounds to ensure that employees were returning to work from their breaks.  He noticed the Lafarge haul truck stopped on County Road 16 and saw an empty white car parked nearby.  He watched the two vehicles and later told the Quarry Manager that he witnessed an individual (who he recognized as a former Lafarge employee) exit the haul truck and drive off in the white vehicle.

On June 24, Ms. Price was notified that she was suspended from work pending further investigation.  The Quarry Manager read to her from a disciplinary memorandum documenting her alleged wrongful conduct.  The memorandum stated, in part:

> Issue:  You were observed on Wednesday, June 23,
> at 8:20 PM parked on the North side of Shelby
> County Road 16 on Vulcan property in a Lafarge haul

> truck.  At 8:35 PM a male individual was witnessed
> leaving the cab of your truck and entering a personal
> vehicle.  This was a small white car.  This was a
> violation of break time, plus non-Lafarge individuals
> are not allowed in a Lafarge work area or on Lafarge
> equipment without management approval.

When the Quarry Manager asked if Ms. Price wanted to respond to the memorandum, she replied, "No, not at this time."  On June 28, 2004, Lafarge sent Ms. Price a letter stating that her employment was terminated—effective immediately.

Ms. Price filed a charge of gender discrimination and retaliation with the EEOC on June 28, 2004.  She amended her charge on July 14, 2004, to include her termination from employment.  She filed this action in federal district court on February 28, 2005, after receiving the EEOC's dismissal and notice of rights in December 2004.

III.   Standard.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the evidence] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting evidence showing that there is no genuine dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23.  In evaluating the arguments of the movant, the court must view the evidence in the light most favorable to the nonmoving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute is genuine only if a 'reasonable jury could return a verdict for the

nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.    Analysis.

A.    Failure to Promote Claims.

Ms. Price maintains that she was denied promotions because of her race, in violation of 42 U.S.C. § 1981.  Her claims include Lafarge's decision to reject her bids for: (1) a Shipping Operator I position in July 2003; (2) a Quarry Operator II position in March or April 2003; (3) a RK-5 Production Operator II position in July 2003; and (4) a "Log Clerk" position in or around June 2003.

Because Ms. Price has not asserted that she has direct evidence of discrimination with regard to her attempts at promotion, we analyze her § 1981 claim using the analytical framework established by the U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1333 (11th Cir. 1998).  First, the plaintiff must establish a prima facie case of discrimination.  "To establish [her] prima facie case of discriminatory failure to promote, [Ms. Price] must

show that (1) [s]he was in a protected group; (2) [s]he was not given the promotion; (3) [s]he was qualified for the position and (4) someone outside of the protected group was given the position." *Id.* (citing *Coutu v. Martin County Bd. of County Commissioners*, 47 F.3d 1068, 1073 (11th Cir. 1995)). The prima facie case, once established, creates a presumption of discrimination, which the employer must rebut with legitimate, nondiscriminatory reasons for the employment action(s) at issue. "If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual." *Standard*, 161 F.3d at 1331.

Lafarge asserts that Ms. Price cannot establish a prima facie case of discrimination with regard to the denial of her bids and/or she cannot rebut Lafarge's legitimate, non-discriminatory reasons for selecting other individuals. In response, Ms. Price cites to the U.S. Supreme Court's decision in *Ash v. Tyson Foods, Inc.*, 2006 WL 386343 (U.S. Feb. 21, 2006). (Doc. 50 at 53-54.)

1.    Shipping Operator I.

It is undisputed that in or around May 2003, Ms. Price, an African-American female, bid on an "Operator I- Shipping" position, and Lafarge subsequently selected David Canterberry, a white male, to fill the position. Lafarge does not dispute that Ms. Price has established a prima facie case of race discrimination with regard to her bid for the Shipping Operator I position.  However, Lafarge maintains that it selected Mr. Canterberry for the position because: "(1) he had more Packhouse experience and relevant qualifications than Plaintiff; and (2) he had actually been performing certain aspects of the job for several months." (Doc. 48 at 3.)  "Faced with these legitimate, nondiscriminatory reasons, [Ms. Price] must now show that they are pretextual." *Standard*, 161 F.3d at 1334.

Ms. Price, however, has not presented any evidence that discredits these proffered reasons.  Since the U.S. Supreme Court's decision in *Ash v. Tyson Foods*, the Eleventh Circuit has reiterated its position that when a plaintiff attempts to prove pretext through differences in qualifications, that "plaintiff must show that the disparities between the successful applicant's and her own qualifications were 'of such weight and significance

that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff.'" *Brooks v. County Comm'n of Jefferson County*, –- F.3d 1941, 1943 (11th Cir. April 18, 2006) (quoting *Cooper v. S. Co.*, 390 F.3d 695, 732 (11th Cir. 2004), *cert denied*, — U.S. —, 126 S. Ct. 478, 163 L. Ed. 2d 363 (2005)).  Ms. Price argues that she was more "qualified" for the Shipping Operator I position because she had more seniority than Mr. Canterberry.  (Doc. 50 at 36.)  Yet, there is no evidence in the record that indicates seniority was or should have been considered as a qualification for the Shipping Operator I position.  Ms. Price has also failed to address Lafarge's evidence that Mr. Canterberry had been performing certain Shipping Operator I duties for Lafarge for nearly two years at the time he was selected for the position.[4]  In short, Ms. Price has failed to meet her burden under existing Eleventh Circuit law to show that no reasonable person could have chosen Mr. Canterberry over her for the Shipping Operator I position.  *See Brooks*, –- F.3d at 1944.  Ms. Price has not provided sufficient evidence to convince a reasonable jury that Lafarge's

---

[4]The Court notes that Ms. Price requested—and was granted—an extension in time to formulate a response to the arguments made in Lafarge's supplemental memorandum in support of summary judgment.  (Doc. 49; Court's Order entered April 7, 2006.)

reasons for selecting Mr. Canterberry as Shipping Operator I were pretext for race discrimination; therefore, summary judgment is due to be granted on this claim.

        2.    Quarry Operator II.

It is undisputed that Ms. Price bid on a "Quarry Operator II" position in March or April 2003, and Lafarge selected Ricky Ellison, a white male. Lafarge alleges that Ms. Price cannot establish a prima facie case with regard to the "Quarry Operator II" position because she did not meet the minimum qualifications required for the job.  (Doc. 34, attach. 1 at 20.) Lafarge also asserts that it hired Mr. Ellison for the "Quarry Operator II" position because he had prior quarry work experience and familiarity with the large mobile equipment used by the individuals in that position.  (*Id*. at 20-21.)

This Court does not need to address whether Ms. Price was actually qualified for the "Quarry Operator II" position, because even if the Court assumes that Ms. Price has established her prima facie case, there is not sufficient evidence in the record to indicate that Lafarge's reasons for hiring Mr. Ellison are pretext for unlawful discrimination.  Ms. Price claims that she

was more qualified than Mr. Ellison because she had more seniority, and because she had experience operating heavy equipment as a member of the National Guard and in her one or two months as a member of the Lafarge Labor Crew.  (Doc. 50 at 35.)  Again, however, Ms. Price has not established that seniority was or should have been considered as a qualification for the "Quarry Operator II" position.   In addition, when Ms. Price's heavy equipment experience is compared with Mr. Ellison's heavy equipment experience and his several years experience working in the quarry—which included prior work experience as a "Quarry Operator II"—this Court cannot conclude that the disparity is so great that no reasonable person could have chosen Mr. Ellison over Ms. Price.  Ms. Price has failed to show that Lafarge's reason for selecting Mr. Ellison was not a reason "that might motivate a reasonable employer." *Price v. M&H Valve Co.*, 2006 WL 897231 at *9 (11th Cir. April 7, 2006) (unpublished opinion) (citing *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001)).   Lafarge is therefore entitled to summary judgment on this promotion claim.

     3.     RK-5 Production Operator II.

It is undisputed that Ms. Price took the written tests required for the "RK-5 Production Operator II" position twice—once in 2002 and again around July 2003.  Both times, Ms. Price was informed that she failed a portion of the test.  Ms. Price does not challenge the fact that she was denied the "RK-5 Production Operator II" position in 2002; Ms. Price does contend, however, that she was rejected for the position in July 2003 because of her race.[5]

Lafarge maintains that Ms. Price has not established a prima facie case with regard to the "RK-5 Production Operator II" position.  The Court agrees.  Ms. Price focuses on the events surrounding her application for the RK-5 position in 2002, but presents little to no argument regarding her bid for the position in July 2003.  Lafarge has presented undisputed evidence that establishes that "RK-5 Production Operator II" applicants in July 2003 were required to take and pass two written tests.  While Ms. Price complains that she was not shown her test results when she asked for them, she has

---

[5]Ms. Price did not file her complaint alleging § 1981 failure to promote claims until February 2005; therefore, any claim related to the denial of a promotion in 2002 is time-barred.  *Hithon v. Tyson Foods, Inc.*, 144 Fed. Appx. 795, 799 (11th Cir. 2005) (unpublished opinion).

not provided any evidence to contradict Lafarge's evidence that she failed a portion of the required exams.  Ms. Price does not allege that any non-African American applicant was awarded an "RK-5 Production Operator II" position in July 2003 without passing the two written tests administered by Lafarge; more importantly, there is no evidence in the record to support such an allegation.  For these reasons, summary judgment is due to be granted on this claim.

        4.    Log Clerk.

Finally, Ms. Price maintains that she was denied a promotion to a "Log Clerk" position in or around June 2003, because of her African-American race.  Ms. Price testified in her deposition[6] that she applied for the "Log Clerk" position by giving her resume to a Lafarge Human Resources employee.  (Pl. Dep. at 172.)  She then testified that she later heard that two such positions were filled by a white male and a white female.  (Pl. Dep. at 173-77.)  Ms. Price does not dispute Lafarge's alleged hiring of the white male, but she contends that she was more qualified than the white

---

        [6]Ms. Price refers to the "log clerk" position as a "law clerk" position in her deposition.  Neither party has disputed that these positions are one and the same.

female because she has a business degree and more experience working at the Roberta Plant. (Pl. Dep. at 178; Doc. 50 at 39.) Lafarge asserts that Ms. Price was not hired for the "Log Clerk" position because a "Log Clerk" position never existed. (Doc. 35, attach. 1 at 18 n.2.)

Ms. Price cannot prevail on a promotion claim with regard to her bid for the "Log Clerk" position. While Ms. Price has established that she applied for a "Log Clerk" position and she was not awarded the position, there is no admissible evidence that the position was filled with non-African American individuals—or that it was filled at all. Ms. Price's testimony regarding the identity and race of those who allegedly filled the "Log Clerk" positions references only inadmissible hearsay and hearsay within hearsay. (Pl. Dep. at 173-78.) A plaintiff's "bare and self-serving allegation[s] where she ha[s] no personal knowledge [are] inadequate to carry [her] burden on summary judgment." *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, (11th Cir. 2000); *see also Pace v. Capobianco*, 283 F.3d 1275, 1278-79 (11th Cir. 2002).

Further, Lafarge has asserted a legitimate, nondiscriminatory reason for failing to select Ms. Price for the "Log Clerk" position: the position was

not available because it did not exist.  *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44 (1977) (concluding that the "absence of a vacancy in the job sought" is a legitimate nondiscriminatory reason for not hiring a person for that position); *see also Perez v. Region 20 Ed. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002) ("The nonexistence of an available position is a legitimate reason not to promote.")  Ms. Price has failed to adduce sufficient admissible evidence to suggest that Lafarge's reason is false.  Therefore, summary judgment is also due to be granted on this promotion claim.

B.     Gender Discharge Claim.

Ms. Price alleges that she was unlawfully terminated because of her gender in violation of Title VII.  She contends that she has adduced both direct and circumstantial evidence in support of her claim.  Lafarge disputes Ms. Price's assertion that she has produced direct evidence of discrimination and states that she cannot prove that its legitimate, nondiscriminatory reason for her discharge is pretext.

1.   Direct Evidence.

"If a [Title VII] plaintiff can provide direct evidence of discriminatory intent, then the employer must prove by a preponderance of the evidence that the same employment decision would have been made in the absence of the discriminatory animus." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) (citing *Wall v. Trust Co. of Georgia*, 946 F.2d 805, 809 (11th Cir. 1991)).  "Direct evidence is evidence that establishes the existence of discriminatory intent behind the employment decision without any inference or presumption." *Id.* (citing *Carter v. City of Miami*, 870 F.2d 578, 580-81 (11th Cir.  1989)).  "Therefore, remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination."  *Id.* (citing *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 924 (11th Cir. 1990)); *see also Rojas v. Florida*, 285 F.3d 1339, 1342-43 (11th Cir. 2002).

Ms. Price claims that Doug Buchanan, the Roberta Plant Manager, made a comment approximately two weeks prior to her termination, which

constitutes direct evidence of discrimination based on her gender.[7]  Ms.

Price testified that "he said that it's a man's world in the quarry.  I know

that, you know, he said that.  And if I want to move somewhere else, let

him know, come and talk to him about anything."[8]  (Pl. Dep. at 332.)

Mr. Buchanan's alleged statement is not direct evidence of gender

discrimination.  "[O]nly the most blatant remarks, whose intent could be

nothing other than to discriminate on the basis of [gender] . . . constitute

direct evidence of discrimination."  *Bass v. Bd. of County Com'rs*, 256 F.2d

1095, 1105 (11th Cir. 2001) (quoting *Damon v. Fleming Supermarkets of*

_____

[7]The Court notes that Ms. Price later argues in her brief that Joe Wujcik, the Quarry Manager—not Mr. Buchanan—was the decisionmaker with regard to her termination.  (Doc. 50 at 49.)  If Ms. Price contends that Mr. Buchanan was not the decisionmaker with regard to her discharge, then his comment cannot constitute direct evidence of discrimination.  The Court assumes, however, that Ms. Price was making alternative arguments in support of her cause, and it will therefore analyze Mr. Buchanan's statement as if he were the decisionmaker.

[8]Ms. Price also alleges that Mr. Buchanan stated that "he did not want to hear the D word, which he refers to as discrimination, again in the plant.  And anyone who complains or talks about discrimination, those are the ones he's going to get rid of."  (Pl. Dep. at 333-34.)  Ms. Price does not argue that this comment constitutes evidence of gender discrimination with regard to her termination; rather, Ms. Price questions Mr. Buchanan's credibility in denying that he made the statement that the quarry was a "man's world," because he also denied making the "D-word" remark.  (Doc. 50 at 44-45.)  Regardless, Ms. Price admits that this "D-word" comment occurred sometime in late December 2001 or January 2002—over two years before Ms. Price's termination.  This remark clearly was unrelated to the decision to terminate Ms. Price and is not direct evidence of discrimination for this claim.

*Fla., Inc.,* 196 F.3d 1354, 1358 (11th Cir. 1999) (citations omitted)).   A statement "that only suggests discrimination or that is subject to more than one interpretation does not constitute direct evidence." *Taylor v. Runyon*, 175 F.3d 861, 867 (11th Cir. 1999) (quoting *Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997)).   Mr. Buchanan's remark does not reflect a clear intent to discriminate based on gender, and it can certainly be interpreted in more than one way.   In addition, the statement does not mention nor allude to Ms. Price's termination from the company, and there is no evidence that the comment was in any way connected with the decision to discharge Ms. Price nearly two weeks later.   At most, Mr. Buchanan's statement can be considered circumstantial evidence of gender discrimination.

      2.     Circumstantial Evidence.

Because there is no direct evidence of discrimination, we turn to the *McDonnell Douglas* framework to analyze Ms. Price's termination claim. *Standard*, 161 F.3d at 1331.   Lafarge does not dispute that Ms. Price has established a prima facie case of gender discrimination with regard to her termination from employment.   (Doc. 34, attach. 1 at 25.)   And, Ms. Price

admits that Lafarge has met its burden of producing evidence of a legitimate, nondiscriminatory reason for her termination. (Doc. 50 at 43.) Therefore, this Court must determine whether Ms. Price has adduced sufficient evidence to convince a reasonable jury that Lafarge's reason is pretext for discrimination.

Lafarge contends that it terminated Ms. Price because it concluded that she violated company policy and work rules on June 23, 2004. To avoid summary judgment, Ms. Price must overcome this asserted legitimate reason by "either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).

a.    False Account of Workplace Violation.

Ms. Price argues that Lafarge's reason is pretext because Lafarge's disciplinary memorandum addressing the events of June 23rd gives a "false" account of Ms. Price's actions. The disciplinary memorandum Ms. Price received prior to her suspension and subsequent termination stated, in part,

that Ms. Price violated company policy prohibiting non-Lafarge employees from being in a Lafarge work area or on Lafarge equipment because a male individual was witnessed leaving the cab of Ms. Price's work truck.  Ms. Price contends that because the deposition testimony of Bob Crow, the Lafarge employee who witnessed—and later reported—Ms. Price's actions on June 23rd, does not match the factual account in the disciplinary memorandum exactly, she has established that Lafarge's reason was pretext for unlawful discrimination.  (Doc. 50 at 45.)[9]  Ms. Price also argues strenuously that she never allowed a non-Lafarge employee in or on her company truck or violated company policy.

"The fundamental problem" with Ms. Price's argument, however, "is that it fails to recognize that proving pretext requires more than showing that the employer was wrong in its assessment of the underlying facts." *Curtis v. Teletech Customer Care Mgmt., Inc.*, 208 F. Supp. 2d 1231, 1245 (N.D. Ala. 2002).  "Evidence showing a false factual predicate underlying the employer's proffered reason does not unequivocally prove that the employer

---

[9]Mr. Crow testified that while he saw a male individual "step off from the [truck's] ladder to the ground," he was not able to see into the cab of Ms. Price's truck or see anyone exit the cab of the truck.  (Crow Dep. at 85-88.)

did not rely on the reason in making the employment decision.  Instead, it may merely indicate that the employer, acting in good faith, made the disputed employment decision on the basis of erroneous information." *Id.* (quoting *Walker v. NationsBank of Florida N.A.*, 53 F.3d 1548, 1564 (11th Cir. 1995) (Johnson, J., concurring specially).

It is undisputed that Mr. Crow testified that he reported to Mr. Wujcik, the Quarry Manager, "what he saw" on June 23rd.  (Crow Dep. at 87.)  It is also undisputed that Mr. Wujcik read the disciplinary memorandum to Ms. Price prior to informing her of her suspension.  When Mr. Wujcik asked Ms. Price if she had anything she wanted to say in her defense, she responded, "No, not at this time."  Moreover, it is undisputed that Mr. Wujcik told Mr. Buchanan, the Plant Manager, that Mr. Crow had observed an unauthorized person in Ms. Price's haul truck during work hours.  Based on Mr. Wujcik's statement, Mr. Buchanan concluded that Ms. Price had committed several safety violations and decided to terminate her employment with the company.

At this juncture, the Court is concerned with the motivations of the

decisionmaker, Mr. Buchanan.[10]   *See, e.g., Standard*, 161 F.3d at 1332-33.

---

[10]In her response to summary judgment, Ms. Price did not indicate any evidence that contradicts Lafarge's proposed undisputed fact that Mr. Buchanan made the decision to terminate Ms. Price. (Doc. 34, attach. 1 at 16, ¶ 85; Doc. 50 at 11-12, ¶ 85.) Per the Court's order entered April 4, 2005, the fact is therefore admitted. (Doc. 8 at 16-17.)

Nevertheless, Ms. Price later argues that Mr. Wujcik—not Mr. Buchanan—was the decisionmaker with regard to her termination because he allegedly made the decision to terminate Ms. Price and provided false information to Mr. Buchanan in order to have him "approve" the termination. (Doc. 50 at 49.) Ms. Price does not cite to any legal authority in support of her assertion, nor is there any evidence that Mr. Wujcik actually made the decision to terminate Ms. Price. However, the Eleventh Circuit has acknowledged that the discriminatory acts of a non-decisionmaker can be imputed to the employer in certain circumstances. *See, e.g., Stimpson v. City of Tuscaloosa*, 186 F.3d 1328, 1331 (11th Cir. 1999); *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1248 (11th Cir. 1998). "[I]n some cases, a discharge recommendation by a party with no power to actually discharge the employee may be actionable if the plaintiff proves that the recommendation directly resulted in the employee's discharge." *Stimpson*, 186 F.3d at 1331. "[T]his causation must be *truly direct*. . . . [T]he plaintiff must prove that the discriminatory animus behind the recommendation, and not the underlying employee misconduct identified in the recommendation, was an actual cause of the other party's decision to terminate the employee." *Id.* (citing *Llampallas*, 163 F.3d at 1248.) (emphasis added).

In this case, Ms. Price has not pointed to any evidence that Mr. Wujcik held a discriminatory animus toward her. (She asserts that Mr. Wujcik was aware of the conduct of her "comparators," but, as detailed later in this opinion, it is the Court's conclusion that Ms. Price has not identified any similarly situated employees whose conduct was nearly identical to her own alleged conduct.) She only argues that his account of her actions was false. Yet, there is no evidence that Mr. Wujcik did not honestly believe that his interpretation of Mr. Crow's report was correct. Further, if there were any inaccuracies in Mr. Wujcik's account to Mr. Buchanan, Ms. Price's failure to correct these errors when she was questioned about the facts detailed in the disciplinary memorandum gave Mr. Wujcik good cause to believe he had accurate information. *See Curtis*, 208 F. Supp. 2d at 1246.

In addition, there is insufficient evidence to support the assertion that Mr. Wujcik's "recommendation" was the direct cause of Mr. Buchanan's decision to terminate Ms. Price. In his declaration, Mr. Buchanan states that he made his decision

We do not "sit as a super-personnel department" and question how Lafarge conducted its investigation, or whether Lafarge should have been less harsh in its discipline.  *See Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991) (quoting *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359, 1365 (7th Cir.1988)).  "Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior."  *Id*.   There is no evidence in the record that Mr. Buchanan "did not honestly and in good faith believe" that Ms. Price had an unauthorized individual in her haul truck during work hours—and thereby violated company policy—when he decided to terminate her employment.  *Curtis*, 208 F. Supp. 2d at 1246.  Therefore, any factual inaccuracy in the disciplinary memorandum Ms. Price received prior to her suspension and termination does not indicate pretext for gender discrimination.

---

to terminate Ms. Price's employment based upon his understanding of the facts of Ms. Price's alleged misconduct.  (Buchanan Decl. ¶¶ 3-4.)  Neither Mr. Buchanan nor Mr. Wujcik testified that Mr. Wujcik recommended that Ms. Price be discharged for her alleged actions.  In fact, Mr. Wujcik stated that he never discussed termination or disciplinary action with Mr. Buchanan.  (Wujcik Dep. at 72-77, 118-19.)  This is not a "cat's paw" or "rubber stamp" case; Mr. Buchanan's decision to terminate Ms. Price "was not simply a tacit approval of [Mr. Wujcik's] decision to do the same."  *Llampallas*, 163 F.3d at 1249.  Therefore, Mr. Wujcik's actions in this instance cannot be imputed to Lafarge to show pretext.

b.    Comparators.

Ms. Price also attempts to show pretext by offering evidence she claims establishes that similarly situated male employees were not terminated for similar company policy violations.  Ms. Price points to Joe Archer, Joe Wujcik, and Jesse Burns as her comparators.  (Doc. 50 at 47.) She alleges that Mr. Archer drove his father-in-law and brother-in-law into the quarry in a company truck on separate occasions, and Mr. Wujcik had Mr. Burns drive Mr. Wujcik's ten year-old grandson around in a company truck.  (*Id.* at 47-48.)

To establish pretext through the use of comparator evidence, Ms. Price must establish that these male employees are similarly situated to her "in all relevant respects."  *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1091 (11th Cir.), *reh'g en banc denied*, 116 Fed. Appx. 257 (11th Cir. 2004).  "The most important factors in the disciplinary contexts are the nature of the offenses committed and the nature of the punishments imposed."  *Silvera v. Orange County Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001), *cert. denied*, 535 U.S. 1013 (2002) (ellipses omitted).  "In order to satisfy the similar offenses prong, the comparator's misconduct must be nearly

identical to the plaintiff's in order 'to prevent courts from second-guessing employer's reasonable decisions and confusing apples with oranges.'" *Id.* (citing *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999)).

Lafarge argues that the conduct for which Ms. Price was disciplined is not "nearly identical" to the conduct of Mr. Archer, Mr. Wujcik, and Mr. Burns because: (1) Mr. Wujcik and Mr. Archer, as managers, had the authority to take non-Lafarge employees in or on Lafarge property; and (2) Mr. Burns received prior express authorization from Mr. Wujcik, the Quarry Manager, to drive Mr. Wujcik's grandson in the company truck. (Doc. 53 at 22-23.) There is evidence in the record to support Lafarge's assertions (Buchanan Dep. at 225-26; Means Dep. at 144-45; Wujcik Dep. at 138-39, 141-48), and Ms. Price has not pointed to any evidence that disputes Lafarge's position. She argues only that the male employees' conduct was "arguably more unsafe" than any action Ms. Price was accused of committing. (Doc. 50 at 49.)

Ms. Price was disciplined for having a non-Lafarge employee in a Lafarge work area or on Lafarge equipment *without management approval*. It is not for this Court to decide whether the actions of other employees

were more or less "unsafe" than those of the plaintiff.  Rather, we must only decide whether the conduct Ms. Price was accused of is "nearly identical" to that of her alleged comparators.  Ms. Price's conduct is not "nearly identical" to that of an employee who acts *with* management approval—whether that authority is expressly given prior to the conduct at issue, or that authority is vested in the individual by virtue of being a member of management.  Therefore, Ms. Price has not established that  Mr. Archer, Mr. Wujcik, and/or Mr. Burns are proper comparators for the purpose of establishing pretext.

### c.    Statements.

Ms. Price's remaining evidence in support of her argument of pretext, then, is her testimony that Mr. Buchanan "said that it's a man's world in the quarry.  I know that, you know, he said that.  And if I want to move somewhere else, let him know, come and talk to him about anything."  (Pl. Dep. at 332.)  Assuming this statement reflects animus towards women, it does not create a genuine issue of fact on pretext.  Even when confronted with inflammatory and discriminatory statements, the Eleventh Circuit has held that while "a comment unrelated to a termination decision may

*contribute* to a circumstantial case for pretext, it will usually not be sufficient absent some additional evidence supporting a finding of pretext." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1229 (11th Cir. 2002) (internal citations omitted) (addressing a decisionmaker's alleged statement, "We'll burn his black ass"); *see also Rojas*, 285 F.3d at 1343. Ms. Price has not presented any additional persuasive evidence of pretext; therefore, Mr. Buchanan's statement is insufficient to create a dispute of fact on the issue.

Because Ms. Price has failed to produce evidence from which a reasonable jury could conclude that Lafarge's reason for her termination was pretext, summary judgment is due to be granted on her Title VII gender discrimination claim.

C.    Retaliation Claim.

Ms. Price contends that Lafarge has retaliated against her in violation of Title VII and § 1981 by denying her bids for positions, and ultimately terminating her, because she engaged in protected activity. (Doc. 50 at 50.) Ms. Price's complaint, however, only alleges a cause of action for retaliatory discharge. (Doc. 1 ¶¶ 33-35.) There is no mention of denied promotions or

positions.  A plaintiff may not raise a new legal claim for the first time in response to the opposing party's summary judgment motion.  *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312 (11th Cir. 2004).  Therefore, the Court will address only Ms. Price's termination with regard to her retaliation claim.[11]

In order to establish a prima facie case of retaliation, a plaintiff must show: "(1) that [s]he engaged in statutorily protected expression; (2) that [s]he suffered an adverse employment action; and (3) that there is some causal relationship between the two events."  *Holifield v. Reno*, 115 F.3d 1555, 1566 (11th Cir. 1997).[12]  The parties agree that termination constitutes an adverse employment action.  Lafarge argues, however, that it is entitled to summary judgment on Ms. Price's retaliation claim because she cannot

---

[11]The Court also notes that aside from her bare allegation that Lafarge retaliated against her by denying her positions, Ms. Price does not support her assertion with any legal argument or citation to the record.  (Doc. 50.)  Upon review, the Court was unable to find any evidence to support the assertion that the denial of positions was causally related to any of Ms. Price's alleged complaints of discrimination.  Therefore, even if her claim of retaliation through the denial of positions were allowed, Lafarge would be entitled to summary judgment.

[12]While it is still an "open question" in this circuit whether the elements of a Title VII and § 1981 retaliation claim are the same, *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1120 n.10 (11th Cir. 2001), the parties in this case have analyzed these claims together and have not raised this as an issue for the Court to address.

show that she engaged in protected expression or that there is a causal relationship between her alleged protected expression and her termination.

           1.     Statutorily Protected Expression.

"To recover for retaliation, the plaintiff 'need not prove the underlying claim of discrimination which led to [her] protest.'" *Holifield*, 115 F.3d at 1566 (quoting *Tipton v. Canadian Imperial Bank of Commerce*, 872 F.2d 1491, 1494 (11th Cir. 1989)).  The plaintiff also does not need to show that she made a "formal" protest; informal complaints to superiors about unlawful discrimination are clearly within the scope of statutorily protected conduct.  *Rollins v. State of Fla. Dep't of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989).  A plaintiff, however, must show that she "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices."  *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).  This standard has been described by the Eleventh Circuit as follows:

> It is critical to emphasize that a plaintiff's burden under this standard has both a subjective and an objective component.  A plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful

employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented.  It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Id.* at 1312 (quoting *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997)).

Ms. Price argues that she "made numerous complaints of race discrimination, gender discrimination and retaliation,"[13] but she references only one: a complaint she made to Mike Parrott, the Quarry Production Coordinator, that a disciplinary reprimand issued on March 5, 2004,[14] was because of her race and gender. (Doc. 50 at 51.)  Ms. Price has failed, then, to allege or establish that she had a subjectively or objectively reasonable belief that her "numerous" complaints addressed unlawful discrimination practices by Lafarge.  Moreover, when this Court analyzes Ms. Price's

---

[13]The Court notes that when Ms. Price made this assertion in the "undisputed facts" portion of her brief, she also failed to cite any evidence in the record in support of her proposition.  (Doc. 50 at 40, ¶ 155.)

[14]In her deposition, Ms. Price testified that she made the complaint to Mr. Parrott on or around February 22 or 23, 2004.  Whether the complaint occurred in late February or early March 2004, however, is not material to the Court's opinion in this matter.

"complaint" to Mr. Parrott, it is apparent that Ms. Price has not met her burden with regard to this protest either.

Ms. Price testified that when she was disciplined for being away from her work station on or around February 22, 2004, she said to Mr. Parrott: "is it because I'm a female and I'm black." (Pl. Dep. at 388-89.) She apparently also asked why a white male employee, Jeff Sheffield, who worked the shift before hers, was not disciplined if he "did not do anything on his shift." (*Id*.) When Mr. Parrott responded, "this is not about Jeff Sheffield; this is about you," Ms. Price apparently told him that the reprimand "wasn't fair" and "it's because I'm female and I'm black." (*Id.* at 389.)

Ms. Price was disciplined for being away from her work station without notifying her supervisors and for failing to follow work procedures and written work instructions for the day. At the time of her complaint, Ms. Price believed that Mr. Sheffield had not done any work on the prior shift; she had no knowledge that he left his work area without notifying supervisors—and there is no evidence that he did so. In short, the behavior Ms. Price was accused of was not "nearly identical" to that of Mr. Sheffield.

Therefore, assuming her belief was subjectively reasonable, Ms. Price's belief that Lafarge had engaged in unlawful discrimination was not objectively reasonable.  Her complaint, then, does not constitute statutorily protected conduct.

       2.    Causal Relationship.

Yet, even if Ms. Price's complaint to Mr. Parrott constituted statutorily protected conduct, she has not adduced sufficient evidence to show that her termination was causally related to her protest.  "In order to establish the requisite 'causal link' required as part of a prima facie case, a plaintiff need only establish that 'the protected activity and the adverse action were not wholly unrelated.'" *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).  The plaintiff must also show that the decision-maker was aware of the protected conduct.  *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000) (quoting *Farley v. Nationwide Mut. Ins.*, 197 F.3d 1322, 1337 (11th Cir. 1999)).

Ms. Price argues that the approximately four months between her complaint and her termination establishes "a close temporal proximity," and is therefore sufficient circumstantial evidence to establish a causal

connection (Doc. 50 at 53), but she has not put forth any evidence that Mr.

Buchanan was aware of her conduct when he decided to terminate her

employment with Lafarge.  Without such evidence, a nearly four month time

period, alone, is insufficient for a reasonable jury to find that Ms. Price's

termination is "not wholly unrelated" to her complaint to Mr. Parrott.  *See*

*Brungart v. BellSouth Telemcomms., Inc.*, 231 F.3d 791, 799 (11th Cir.

2000).

The Court agrees that Ms. Price has not adduced sufficient evidence

that she engaged in statutorily protected activity—or that the alleged

protected conduct was causally related to her termination.[15]  Because Ms.

Price has failed to establish a prima facie case of Title VII or § 1981

retaliation based on either race or gender, summary judgment will be

granted on these claims.

D.    FMLA Claim.

In response to summary judgment, Ms. Price argues that Lafarge

violated the FMLA because she was terminated less than thirty days after

---

[15]The Court notes that Ms. Price did not argue or produce any evidence in support of her assertion that "numerous" other complaints about discrimination caused her termination.

she returned from medical leave.  (Doc. 50 at 54.)  Lafarge contends: (1) Ms.

Price has no evidence to support an interference claim; and (2) she is not

entitled to assert a retaliation claim at this juncture because it was not

adequately pled in her complaint.  This Court agrees.

"The FMLA creates two types of claims: interference claims, in which

an employee asserts that his employer denied or otherwise interfered with

his substantive rights under the Act, and retaliation claims, in which an

employee asserts that his employer discriminated against him because he

engaged in activity protected by the Act."  *Strickland v. Water Works &*

*Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001).  "To state a claim of

interference with a substantive right, an employee need only demonstrate

by a preponderance of the evidence that he was entitled to the benefit

denied."  *Id.* at 1207.  "In contrast, to succeed on a retaliation claim, an

employee must demonstrate that his employer intentionally discriminated

against him in the form of an adverse employment action for having

exercised an FMLA right."  *Id.*

Ms. Price's complaint states the following:

> Defendant terminated Plaintiff after she returned from medical leave on or about June 1, 2004. Defendant has refused to return Plaintiff to her position or an equivalent position following her family/medical leave and/or has interfered with Plaintiff's FMLA rights in violation of the FMLA. Defendant's actions as described herein are willful.

(Doc. 1 ¶ 37.)  These allegations clearly constitute a claim for interference under the FMLA if Ms. Price's health condition qualified her for FMLA protection.  However, Ms. Price has admitted that she was granted all the leave she requested, and after she returned to work on June 1, 2004, she was reinstated to the same position she held before taking leave—with the same pay, schedule, benefits, and duties.  (Doc. 34, attach. 1 at 9 ¶¶ 49 & 52, 10 ¶ 53; Doc. 50 at 7 ¶¶ 49, 52-53.)  Because Ms. Price has not asserted that she was denied any other benefit(s) to which she was allegedly entitled under the Act, summary judgement is due to be granted on this claim.

However, Ms. Price's new argument that Lafarge violated the FMLA by terminating her less than thirty days after she returned from medical leave appears to be an attempt to convert her FMLA interference claim into a cause of action for retaliation.  Once again, a plaintiff cannot add a new legal claim in response to summary judgment.  *Gilmour v. Gates, McDonald*

& *Co.*, 382 F.3d 1312 (11th Cir. 2004); *see also Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006).  Ms. Price did not amend her complaint to add a claim for retaliation under the FMLA.  Therefore, that claim is not before the Court.[16]

E.    Invasion of Privacy Claim.

Lastly, Ms. Price alleges that Lafarge is liable for invasion of her privacy under Alabama law because Lafarge agents/employees disclosed her personal medical information to other employees while she was on leave from work.  (Doc. 1 at ¶ 40.)  Lafarge maintains that it is entitled to summary judgment on this tort law claim because: (1) the claim is preempted by Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185; (2) any disclosures by Lafarge employees were not made in the scope of their employment; (3) the information allegedly disclosed was not private because Ms. Price voluntarily disclosed her medical condition; and (4) the alleged disclosure did not constitute "publicity."

---

[16]Even if this Court concluded that Ms. Price had adequately pled a cause of action for FMLA retaliation, she has not adduced sufficient evidence to convince a reasonable jury that Lafarge terminated her because she exercised her rights under the FMLA.

It is not necessary for this Court to address the issue of preemption because Ms. Price has not adduced sufficient evidence to convince a reasonable jury that she is entitled to judgment against Lafarge for the tort of invasion of privacy by publicity.[17]   The Alabama Supreme Court has adopted the "language and reasoning" of the Restatement (Second) of Torts § 652D (1977), with regard to a plaintiff's claim of invasion of privacy based on publicity of private information.   *Ex parte The Birmingham News, Inc.*, 778 So. 2d 814, 818 (Ala. 2000).  Section 652D states:

> One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that[:] (a) would be highly

---

[17]In her response submission, Ms. Price cites the legal standard governing invasion of privacy relating to sexual harassment (i.e., intrusion) claims.  (Doc. 50 at 54-55.)  This is not the kind of invasion of privacy claim that Ms. Price alleges in her complaint or discusses in the remainder of her memorandum in opposition to summary judgment.  In Alabama, "[i]t is generally accepted that invasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use." *Ex parte The Birmingham News, Inc.*, 778 So. 2d 814, 818 (Ala. 2000) (quoting *Johnston v. Fuller*, 706 So. 2d 700, 701 (Ala. 1997)).  Ms. Price has alleged that agents/employees of Lafarge released or disclosed her personal health information to other employees; this is properly characterized as an assertion of invasion of privacy by publicity.  In addition, even if an intrusion claim had been pled in this case, Ms. Price has not adduced sufficient evidence to survive summary judgment.

offensive to a reasonable person, and (b) is not of legitimate concern to the public.

"Thus, in order to present a prima facie case of this particular kind of invasion of privacy, the plaintiff must present substantial evidence tending to show the existence of each of the elements set out in § 652D." *Id*.  The Alabama Supreme Court has defined the test, in part, as follows:

> The first—and key—element in proving this invasion-of-privacy tort is "publicity."  Comment a to § 652D defines "publicity" [as] making a "matter . . . public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge."  "Publication," on the other hand, "is a word of art, which includes any communication by the defendant to a third person."  If a person has given "publicity" to the matter, then the communication is sure to reach the public.  Comment a adds: *Thus it is not an invasion of the right of privacy, within the rule stated in this Section, to communicate a fact concerning the plaintiff's private life to a single person or even to a small group of persons.*

*Id*. (citations omitted) (emphasis in original).  A plaintiff must show more than mere "publication," then; she must establish "publicity" of the information.

Ms. Price testified that Alfred Robinson, a Lafarge employee, told her that Jesse Burns told "the guys at the quarry" over the company radio that she was "out because of stress."  (Pl. Dep. at 234-35.)  Ms. Price also testified that a former Lafarge employee called her and said that she heard from Bobby Watts, a current employee, that Ms. Price was not at work because of stress.  (*Id*. at 231.)  Finally, a Mr. Jemison, another employee at Lafarge, told Ms. Price that he heard she was out for stress, but there is no evidence how, or from whom, he heard the information.[18]  (*Id*. at 232.)  At best, the evidence Ms. Price submits in support of her invasion of privacy claim establishes that a limited group of employees heard or discussed the fact that she had taken leave from work because of stress.  There is not substantial evidence that statements regarding the reasons for Ms. Price's medical leave were made to "the public at large or to a large enough number of persons that the statements were substantially certain to become one of public knowledge."  *Swanson v. Civil Air Patrol*, 37 F. Supp. 2d 1312,

---

[18]Notably, there is no evidence that Mr. Jemison learned this information from a Lafarge employee.  (Pl. Dep. at 232, 236.)  Ms. Price, herself, testified that she told a couple of former Lafarge employees about the health reasons for her leave.  (Pl. Dep. at 237-38.)  Thus, it is not inconceivable that Mr. Jemison found out about Ms. Price's leave from an individual outside of work.

1331 (M.D. Ala. 1998) (citing *Johnston*, 706 So. 2d at 703); *see also Rosen v. Montgomery Surgical Ctr.*, 825 So. 2d 735 (Ala. 2001); *Ex parte Birmingham News, Inc.*, 778 So. 2d 814 (Ala. 2000).

However, even if there were sufficient evidence to establish "publicity," Ms. Price has failed to show that Lafarge can be held liable for the actions of those allegedly responsible for publicizing her health information. Mr. Burns is a "Quarry Operator II" (Burns Dep. at 12-13), and Mr. Watts is a storeroom clerk (Watts Dep. at 12). Neither are supervisors or members of management. "An employer is liable for the intentional torts of its employee(s) if: (1) the employee's acts are committed in furtherance of the business of the employer; (2) the employee's acts are within the line and scope of his employment; or (3) the employer participated in, authorized, or ratified the tortious acts." *Atmore Cmty. Hosp. v. Hayes*, 719 So. 2d 1190, 1194 (Ala. 1998) (citing *Potts v. BE&K Constr. Co.*, 604 So. 2d 398, 400 (Ala. 1992)). Ms. Price has not adduced any evidence that meets this standard with regard to the alleged disclosures of either Mr. Burns or Mr. Watts. Therefore, summary judgment is due to be granted on Ms. Price's state law claim.

V.    Conclusion.

For the reasons set forth above, Lafarge's motion for summary judgment is due to be granted in all respects.   A separate order in conformity with this opinion will be entered.

Done this <u>28th</u> day of <u>June 2006</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153